UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>**Juan MORENO-Mesa,**<br><br>        Defendant(s) | Magistrate Case No.<br>**'08 MJ 1427**<br><br>COMPLAINT FOR VIOLATION OF:<br><br>Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii)<br>Transportation of Illegal Aliens |

The undersigned complainant, being duly sworn, states:

On or about **May 5, 2008**, within the Southern District of California, defendant **Juan MORENO-Mesa** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Gilberto MERCADO-Torres, Francisco Javier GOMEZ-Hernandez,** and **Jose De Jesus ALVARADO-Hernandez** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
Terri L. Dimolios
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 6th DAY OF May 2008.

Louisa S. Porter
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Juan MORENO-Mesa



## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Gilberto MERCADO-Torres, Francisco Javier GOMEZ-Hernandez,** and **Jose De Jesus ALVARADO-Hernandez** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On May 5, 2008, Supervisory Border Patrol Agent M. Hansen was conducting anti-smuggling duties in Eastern San Diego County and was assigned to the San Diego Sector Smuggling Interdiction Group (SIG). Agent Hansen was operating a marked Department of Homeland Security (DHS) pursuit sedan with fully functioning emergency lights and audible police siren. Agent Hansen was monitoring activities in an area near Descanso, California. This area is located in a remote mountainous region approximately 40 miles east of San Diego, California and 20 miles northwest of the Tecate, California Port of Entry. Many areas surrounding this location are well-known alien smuggling load-up and checkpoint circumvention routes.

At approximately 5:20, a.m., Agent Hansen observed a green Ford Expedition traveling westbound on Interstate eight (I-8) between Highway 79 and East Willows Road. Agent Hansen fell in behind the Expedition and the driver responded by slowing to approximately 50 miles per hour. The speed limit in this area is 70 miles per hour. As the Expedition traveled over uneven portions of the road surface the rear suspension appeared very stiff as if under a heavy load. Agent Hansen has made many apprehensions of alien smuggling load vehicles with modified rear suspensions. The rear springs or coils are often spread or stretched with a variety of aftermarket devices in an effort to present a level riding appearance when grossly overloaded. These modifications, coupled with an overloaded suspension produce a distinct bounce to a vehicle, as observed by Agent Hansen in the case of this Expedition. Agent Hansen contacted the dispatch center and requested registered owner/stolen vehicle checks on the Expedition referencing its displayed license plate. Dispatch soon relayed that the vehicle was registered out of Littlerock, California, which is in Los Angeles County. Agent Hansen has learned through his experience that Los Angeles is a major hub of alien smuggling for areas throughout the southwestern border. Agent Hansen began to pull alongside the Expedition in an effort to better observe the driver. The Expedition began to pull to the shoulder. Anticipating a bail-out, Agent Hansen fell back behind the Expedition. The Expedition then re-entered the travel lanes and sped up. Agent Hansen again attempted to pull alongside the Expedition, with the same results. Agent Hansen requested backup from additional SIG agents in the area.

When Senior Patrol Agent J. Miranda drew near, Agent Hansen activated his emergency lights and siren in an effort to perform a vehicle stop. The Expedition failed to yield for approximately 2 miles, but maintained a slow steady pace below the posted speed limit. While the Expedition was fleeing, Agent Hansen again attempted to pull alongside to see the driver. The driver then quickly pulled to the shoulder and two individuals jumped from the front passenger door of the still moving Expedition. The Expedition continued westbound on the shoulder at a slow speed. Believing the Expedition to now be driverless, Agent Miranda placed his unmarked Service vehicle in the patch of the Expedition. The Expedition impacted the Service vehicle and came to a stop. There was no damage to the Service vehicle and minimal damage to the Expedition. There were no injuries to anyone. One of the subjects who bailed out of the Expedition stopped at the barbed wire fence paralleling I-8 and did not flee or resist further. Agent Miranda and Senior Patrol Agents T. Engelhorn and M. Ortiz engaged the remaining runner in foot pursuit northbound through canyons towards El Capitan Reservoir. This single subject was tracked for the approximately the next five hours but he was not found and remains at large.



**CONTINUATION OF COMPLAINT:**
**Juan MORENO-Mesa**

Agent Engelhorn, who was following this subject's foot sign throughout this time, determined that the subject he was tracking appeared very well versed in avoiding detection through tracking, as seen with alien smuggler foot guides. This subject often would use the terrain to his advantage, seeking out low areas and hard packed ground over softer areas. He also removed his shoes on occasion to make tracking more difficult. Directly after agents were able to stop the Expedition Agent Hansen approached the Expedition and observed that it was completely filled with people. Agent Hansen photographed the vehicle, the impacted areas of the Expedition and Agent Miranda's Service vehicle and the fifteen passengers remaining in the Expedition. Agent Hansen identified himself as a U.S. Border Patrol Agent to the fifteen passengers still in the Expedition and the single subject, later identified as the defendant **Juan MORENO-Mesa**, detained from the fence line and questioned all sixteen as to their citizenship and immigration status. All sixteen individuals, including the defendant, admitted to being citizens and nationals of Mexico illegally present in the United States. At Approximately 5:27 a.m., Agent Hansen placed these sixteen individuals under arrest and arranged for them to be transported to the El Cajon Border Patrol Station for processing.

## STATEMENT OF DEFENDANT: Juan MORENO-Mesa

The defendant was read the Miranda rights in the Spanish language and was willing to answer questions without an attorney present. The defendant freely admitted to being a citizen and national of Mexico illegally present in the United States. The defendant stated that he arrived in Tijuana, Baja California with the intent to illegally enter into the United States, find work and live with relatives in Temecula, California.

While in Tijuana, the defendant stated that he met an alien smuggler who agreed to smuggle him for a smuggling fee of $1,000.00 (US). After agreeing, the smuggler introduced him to another alien smuggler known only as Adolfo. The defendant claimed that Adolfo offered him work as smuggler picking up illegal aliens already in the U.S. Adolfo told the defendant that he could use the money he would make to pay off his smuggling fee. After the defendant agreed to work for Adolfo, he was given a Motorola cellular phone so that he could be contacted to make the smuggling arrangements once in the United States. The defendant stated the he then illegally entered into the U.S. from Tijuana by walking through the hills approximately eight days ago. The defendant has been staying at his relative's house in Temecula since he entered.

On Wednesday April 30, 2008, Adolfo called the defendant and told him that a man working for him would arrive to his house in Temecula and drop off a Ford Expedition. The defendant was told that he would use that Expedition to pick up a group of illegal aliens at the 18 mile-marker on Japatul Valley Road in Japatul, California. Later that day, the unknown man arrived at the defendant's house and dropped off the Expedition. Furthermore, he drew and explained a map with the precise directions to the location where the aliens were to be picked up. After picking up the aliens, the defendant would drive towards Los Angeles, California with the aliens. The defendant was expected to be contacted once he began heading towards Los Angeles for further details. The unknown man told the defendant that he was going to be paid $100.00 (US) per alien for this event. On May 4, 2008, the defendant stated that he left Temecula in the Expedition and headed to Japatul. As instructed, he arrived at the 18 mile-marker at approximately 4:55 a.m., and parked on the side of the road where he activated his hazards lights signaling the group that he was the one picking them up. Upon his signal, the group came out of the brush and entered his vehicle. Once everyone in the group got in, the defendant left and headed back towards I-8. While traveling west on I-8, the defendant noticed that someone in a law-enforcement vehicle was attempting to stop him. Because he became afraid, he did not stop right away. When the defendant pulled over, he moved away from the driver seat and sat between the driver seat and the front passenger seat in order to avoid being identified as the driver. The defendant said that because he never engaged the vehicle into the park gear, it began rolling forward until it crashed against another vehicle. The defendant said that he knew that everyone in the group was an illegal alien and that it was against the law to smuggle aliens.



CONTINUATION OF COMPLAINT:
Juan MORENO-Mesa

### MATERIAL WITNESSES STATEMENTS:

Material witnesses **Gilberto MERCADO-Torres, Francisco Javier GOMEZ-Hernandez,** and **Jose De Jesus ALVARADO-Hernandez** admitted in summary that they are citizens and nationals of Mexico illegally present in the United States. Each stated that they made arrangements at or near the international airport in Tijuana, Baja California Mexico to be smuggled to various parts of the United States for a fee ranging from $1000.00 to $1,500.00 (US). The material witnesses stated that they entered the United States illegally with the aid of an alien smuggler/foot guide near Tecate, Baja California, Mexico. They stated that the group walked for approximately three days through some rugged and mountainous terrain until they reached a pre-determined location. A load vehicle arrived soon after and picked them up. Material witness GOMEZ stated that he feared for his life because the driver was driving extremely fast and felt that his door was going to open as the driver made sudden turns.

The material witnesses were presented with a series of 16 color Polaroid photographs depicting each individual arrested in this event. All three material witnesses were able to positively identify the defendant Juan MORENO-Mesa as the driver.